THE MAYOR AND ALDERMEN OF JERSEY CITY, RESPONDENT, v. JOHN R. HENNESSEY, APPELLANT.

Argued November 22, 1918—Decided March 3, 1919.

The operation of the Pure Food act of 1907 (*Pamph. L., p.* 485) as amended (*Pamph. L.* 1911, *p.* 61) precludes the exercise, by the boards of health in cities of the first class, of any power derived from *Pamph. L.* 1904, *p.* 344, to deal with the purity and standard of milk, and in cities where such ordinances existed, the effect of the statute of 1907 was to render them inefficacious.

---

On appeal from the Supreme Court.

For the appellant, *Gilbert Collins.*

For the respondent, *John Milton.*

The opinion of the court was delivered by

KALISCH, J.    The appellant was convicted in the First Criminal Court of Jersey City of violation of section 26 of

an ordinance entitled "An ordinance regulating the general conditions governing the sale of milk or cream in Jersey City, and the conditions under which milk or cream shall be maintained or handled and the quantity of milk or cream sold or offered for sale in Jersey City."

The validity of the ordinance is assailed upon the ground that the municipality had no power to pass an ordinance prescribing the standard of purity of food.

Section 26 of the ordinance reads: "All milk sold or offered for sale in this city must conform to the statutory requirements of New Jersey at present in force or which shall hereafter be enacted governing the composition and purity of milk and cream and to ordinances of this city. It must contain not less than three (3%) per cent. of butter fat; not less than eleven and five-tenths (11.5%) per cent. of total solids; not less than eight and five-tenths (8.5%) per cent. of solids not fat, and not more than eighty-eight and five-tenths (88.5%) per cent. of water."

The objection urged against the validity of the ordinance is well founded.

Section 26, and several other sections of the ordinance, establish and regulate the standard of quality and purity of milk that may be lawfully sold, distributed, &c., and fixes penalties for non-compliance with the provisions of the ordinance.

The argument of appellant's counsel in support of his attack upon the validity of the ordinance, succinctly stated, is this: That the power exercised by the municipality (which has adopted a commission form of government, and under the Walsh act became invested with the powers conferred upon the board of health) finds its source in the fourth section of an act of the legislature passed in 1904. *Pamph. L., p.* 344; *Comp. Stat., p.* 2684, § 92. That the fourth section referred to which authorizes boards of health in cities of the first class "to pass, enact, alter, amend and repeal ordinances relating to the public health of such cities," in so far as it conferred any power on such board of health to deal with the purity of milk, an article of food, was im-

pliedly revoked by the later statute of 1907. *Pamph. L., p.* 485; amended in 1911, *Pamph. L., p.* 61.

This contention appears to be sound.

The statute of 1907 is entitled "An act to secure the purity of foods, beverages, confectionery, condiments, drugs and medicines, and to prevent deception in the distribution and sales thereof."

Section 6 of the act, as amended in 1911, covers the entire provision of section 26 of the ordinance, relating to the purity of milk and cream, which section of the ordinance the appellant was charged with having violated and on which charge he was convicted.

Section 30 provides for the enforcement of the provisions of the act by the board of health of any municipality, and section 34 provides a penalty for the violation of section 6 of the act, and section 40 expressly declares that the penalty for such violation "shall be recovered in an action of debt by and in the name of the board of health of the State of New Jersey, or by and in the name of any board of health of any municipality of this state, as the case may be, as plaintiff."

As has been already pointed out, that under the Walsh act cities of the first class, like Jersey City, which have adopted the commission form of government, the board of commissioners being made the successor to the board of health, the enforcement of the provision of the statute devolves upon the successor.

The legal effect of the operation of the act of 1907, as amended in 1911, was to preclude the exercise of any power derived by the boards of health in cities of the first class from the act of 1904, to deal with the purity and standard of milk, and in cities where such ordinances existed the effect of the statute of 1907 was to render them inefficacious.

In *Eldridge* v. *Philadelphia and Reading Railroad Co.,* 83 *N. J. L.* 463, Mr. Justice Garrison, speaking for this court, cites with approval the following excerpt from the opinion in *Harrington's Sons Co.* v. *Jersey City,* 78, *Id.* 610: "When the legislature frames a new and general rule covering an

entire subject-matter, all earlier and different rules touching the same matter are to be discarded in favor of such later rule."

According to this legal rule it is plain that the later statute did not in effect repeal *in toto* the act of 1904, but merely circumscribed the power therein conferred upon municipalities to matters pertaining to public health that did not come within the scope of the statute of 1907 and the amendment referred to.

It is readily to be seen that unless the power conferred by the act of 1904 is limited to the extent above indicated, it would result in a chaotic legislative situation regarding the exercise of police power regulations. Each municipality would be entitled to enact its own code of laws on the matter, and there would spring up as many variant laws on the subject as there are municipalities in the state invested with power to enact ordinances relating to public health. Besides such double legislation tends to oppression, in that it might subject an accused to a double prosecution and punishment for a single and the same offence.

It follows from the views herein expressed that the respondent-municipality was without legal power to enact section 26 of the ordinance, of the violation of which the appellant was convicted, and, therefore, the judgment under review is reversed, with costs.

*For affirmance*—None.

*For reversal* — THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, MINTURN, KALISCH, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 12.